**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| BRAMSHILL INVESTMENTS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>ASHLEY PULLEN,<br><br>*Defendant*. | Civil Action No. 19-18288<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

Plaintiff Bramshill Investments LLC ("Plaintiff" or "Bramshill") sues Defendant Ashley Pullen for various claims arising out of Defendant's alleged misappropriation of Plaintiff's proprietary information. Currently pending before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint. D.E. 45. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part**.

---

[1] Defendant's brief in support of her motion to dismiss will be referred to as "Def.'s Br." D.E. 45. Plaintiff's opposition will be referred to as "Pl.'s Opp." D.E. 52. Defendant's reply will be referred to as "Def.'s Reply." D.E. 59.

I.      **BACKGROUND**[2]

In or around September 2017, Defendant operated her own advisory firm, SparHawk Advisory, LLC ("SparHawk") "to assist women-owned alternative asset managers with instituting best practices and creating infrastructure around the marketing process to [] raise capital." Am. Compl. ¶ 19. On or about May 20, 2019, Defendant was hired by Plaintiff as an Executive Director. *Id*. ¶ 27. Plaintiff is an "alternative asset management firm that specializes in investment opportunities across" various sectors, including bonds, securities and credit. *Id*. ¶ 1.

At the time that Defendant was hired, she denied operating any competing businesses and assured Plaintiff that she had ceased all SparHawk operations, including her SparHawk email account. *Id*. ¶ 30. Defendant signed an Employment Agreement upon which she agreed, among other things, to "not engage in any other business activity, whether or not pursued for pecuniary advantage, that will require any substantial service on the part of [Defendant]." *Id*. ¶ 31; *see also* D.E. 43-1, Ex. C. Defendant likewise agreed to abide by Plaintiff's Code of Ethics and Compliance Manual which set forth certain policies and procedures concerning Plaintiff's proprietary and confidential information. *Id*. ¶¶ 34-37. As a result of Defendant's representations to comply with Plaintiff's policies and procedures, Plaintiff provided Defendant with access to its proprietary information, including "client lists, marketing materials, and investment amounts by investor and trends," as well as "prospect and target lists." *Id*. ¶ 39. Based on the foregoing, Plaintiff claims that Defendant became "privy to . . . [Plaintiff's] client's names, addresses, contact

---

[2] When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in Plaintiff's Amended Complaint ("Am. Compl."), D.E. 43. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

2

information, dates of birth, social security numbers, investment amounts, payment schedules, and other confidential information." *Id.* ¶ 40.

In or around August 2019, Plaintiff's outside compliance consultant – Greyline Partners, LLC – discovered that Defendant was "sending proprietary documents and information from her Bramshill email account to her SparHawk email account," and subsequently notified Plaintiff. *Id.* ¶ 45. Specifically, on August 6, 2019, select files such as Plaintiff's "most-coveted client list" and various other "employee client lists" were sent from Defendant's Bramshill email account to her personal SparHawk email account. *Id.* ¶ 47. As a result, Plaintiff further inspected Defendant's Bramshill email account to determine whether Plaintiff had sent any other confidential documents to her SparHawk email. *Id.* ¶ 51. Plaintiff claims that on more than fifteen other occasions, Defendant wrongfully converted proprietary information such as marketing lists, investor lists, and contact lists. *Id.* ¶ 52. Plaintiff alleges that Defendant's "conduct started within the first few weeks of [Defendant's] hire date, and continued throughout her employment." *Id.* ¶ 54.

On August 8, 2019, Plaintiff fired Defendant "for violating Plaintiff's business protocols, her Employment Agreement, and regulatory and privacy regulations." *Id.* ¶ 55. After Defendant's termination, Plaintiff continued its investigation into Defendant's conduct. *Id.* ¶ 59. Plaintiff alleges, upon information and belief, that Defendant used and continues to use Plaintiff's confidential and proprietary information in connection with her SparHawk company. *Id.* ¶ 61. Plaintiff further alleges that after it filed a motion for a preliminary injunction, Defendant returned approximately 1,163 pages of documents containing proprietary information. *Id.* ¶ 64.

Plaintiff states that Defendant operated a competing business to the detriment of Plaintiff. *Id.* ¶ 77. Plaintiff claims that Defendant was not authorized to operate a competing business or send Plaintiff's confidential and proprietary information to her personal SparHawk

account. *Id*. ¶ 88. Plaintiff further contends that Defendant's "conduct was a part of a scheme to interfere with and disrupt Plaintiff's relationships with its existing clients and to wrongfully divert critical business opportunities" to SparHawk. *Id*. ¶ 87. Plaintiff brought the following claims against Defendant: (1) violation of the Economic Espionage Act, as amended by the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq*.; (2) violation of the New Jersey Trade Secrets Act ("NJTSA"), N.J.S.A. 56:15-1, *et seq*.; (3) violation of the New Jersey Computer Related Offenses Act ("NJCROA"), N.J.S.A. 2A:38A-1, *et seq*.; (4) breach of contract; (5) breach of the duty of loyalty; and (6) unjust enrichment. *See id*. ¶¶ 97-138.

## II.    PROCEDURAL HISTORY

On September 24, 2019, Plaintiff filed its Complaint against Defendant. D.E. 1. Plaintiff also filed a motion for a temporary restraining order and preliminary injunction. D.E. 3. The Court subsequently denied Plaintiff's request for a temporary restraining order and set a hearing for the preliminary injunction. D.E. 18. Plaintiff then withdrew its request for a preliminary injunction. D.E. 23, 24. Defendant subsequently moved to dismiss Plaintiff's Complaint. D.E. 33. That motion was administratively terminated, D.E. 41, upon the filing of Plaintiff's Amended Complaint on February 4, 2020, D.E. 43. Defendant then moved to dismiss the Amended Complaint for failure to state a claim. D.E. 45. Plaintiff filed opposition, D.E. 52, to which Defendant replied, D.E. 59.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## IV.   ANALYSIS

Plaintiff asserts the following Counts against Defendant: (1) violation of the DTSA; (2) violation of the NJTSA; (3) violation of the NJCROA; (4) breach of contract; (5) breach of the duty of loyalty; and (6) unjust enrichment. *See* Am. Compl. ¶¶ 97-138. Defendant moved to dismiss all Counts, which the Court addresses in turn.

### A.   Counts One & Two – DTSA & NJTSA

The DTSA and NJTSA require a plaintiff to show "(1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret." *Par Pharm., Inc. v. QuVa Pharm, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019). "[T]he analysis under [the] DTSA folds into that of [the]

5

NJTSA." *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 355 (D.N.J. 2019) (quoting *Scherer Design Grp., LLC v. Schwartz*, No. 18-3540, 2018 WL 3613421, at *4 (D.N.J. July 26, 2018), *aff'd sub nom. Scherer Design Grp., LLC v. Ahead Eng'g LLC*, 764 F. App'x 147 (3d Cir. 2019)). The Court therefore considers the two claims together.[3]

Misappropriation is defined in the DTSA to include "[1] '*acquisition* of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by *improper means*' or [2] '*disclosure* or *use* of a trade secret of another without express or implied consent' in specified circumstances." *AUA Priv. Eq. Partners, LLC v. Soto*, No. 17-8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018) (quoting 18 U.S.C. § 1839(5) (emphases added)). "Improper means" is defined under the DTSA as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."[4] 18 U.S.C. § 1839(6). Taken together, the DTSA "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *Soto*, 2018 WL 1684339, at *4 (quoting *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-2177, 2017 WL 1436044, at *4 (N.D. Cal. Apr. 24, 2017)). Here, the Court finds that Plaintiff sufficiently pleads its claims for misappropriation of trade secrets under the DTSA and NJTSA. Defendant does not appear to contest that the confidential and proprietary information at issue are considered "trade secrets" within the meaning of the DTSA and NJTSA. *See* Def.'s Br. at 12-21. Rather, Defendant contends that the Amended Complaint fails to sufficiently allege that Defendant "improperly acquired or

---

[3] The parties also analyze the two claims together. Def.'s Br. at 12-21; Pl.'s Opp. at 7-11.

[4] The NJTSA contains virtually identical definitions of "misappropriation" and "improper means." *See* N.J.S.A. 56:15-2.

used the [c]onfidential [i]nformation to compete against [Plaintiff]." *Id*. at 13.  The Court, therefore, limits its analysis to the DTSA's "misappropriation" prong.

At the motion to dismiss stage, a plaintiff is not required to make specific allegations regarding a defendant's use or disclosure of trade secrets to state a *prima facie* claim of misappropriation. *See Chubb INA Holdings Inc. v. Chang*, No. 16-2354, 2017 WL 499682, at *10 (D.N.J. Feb. 7, 2017); *see also Inventiv Health Consulting, Inc. v. Atkinson*, No. 18-12560, 2019 WL 6522742, at *5 (D.N.J. Dec. 4, 2019) (recognizing "that information concerning Defendant[']s alleged use of the trade secret may, at this juncture, be solely within the Defendant[']s knowledge") (quoting *Reckitt Benckiser Inc. v. Tris Pharma, Inc.*, No. 09-3125, 2011 WL 773034, at *5 (D.N.J. Feb. 28, 2011)).  Here, Plaintiff alleges that Defendant operated a competing company (SparHawk) prior to her joining Bramshill.  Am. Compl. ¶¶ 18-19.  Plaintiff adds that at the time of her hiring, Defendant "denied operating any other competing businesses or engaging in any outside activity, and reassured [Plaintiff] that she had ceased all SparHawk operations, including her SparHawk email accounts."  *Id*. ¶ 30.  However, Plaintiff claims that it subsequently discovered that Defendant had sent various trade secrets from her Bramshill email account to her SparHawk email account.  *Id*. ¶¶ 47-50.  Plaintiff alleges that this was done against company protocol and without authorization.  *Id*. ¶¶ 47, 52, 77, 88.  Moreover, Plaintiff claims that its review of social media platforms demonstrated that SparHawk was "alive and well" during this time, "despite Defendant's claims to the contrary."  *Id*. ¶ 63.  Plaintiff alleges upon information and belief[5] that Defendant has

---

[5] A plaintiff may plead facts upon information and belief "where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control – so long as there are no boilerplate and conclusory allegations and plaintiffs accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)) (internal punctuation omitted).  The Court finds that

used, and will continue to use, Plaintiff's trade secrets "to further her competing SparHawk business, and [to] communicate with [Plaintiff's] current and potential investors for personal gain, to the detriment of [Plaintiff]." *Id*. ¶¶ 21-22. Accordingly, Plaintiff sufficiently pleads its "use" theory of liability under the DTSA. Plaintiff alleges specific facts (1) as to Defendant's opportunity to exploit Plaintiff's information – that is, through SparHawk, (2) as to Defendant's knowledge of, and acquiescence to, Plaintiff's confidentiality policy, (3) as to Defendant's material misrepresentations concerning SparHawk's closure, and (4) as to Defendant's improper taking of Plaintiff's protected information. As a result, the information and belief allegation is supported by specific and pertinent factual claims.

The Court also finds that Plaintiff has sufficiently pled an "improper acquisition" theory. The Amended Complaint alleges that upon her hiring, Defendant agreed to abide by Plaintiff's confidentiality agreement, which, among other things, indicates that the trade secrets at issue are "the sole and exclusive property of [Plaintiff]," and that "such secret and confidential information is revealed to [Defendant] in trust, based [] upon the confidential relationship existing between [Plaintiff] and [Defendant]." *Id*. ¶ 71. Plaintiff further alleges that "in accordance with [Plaintiff's] policies and protocols, any and all communications and transmittal of documents should [have] remain[ed] on [Defendant's] Bramshill issued email account." *Id*. ¶ 38. Nonetheless, Defendant is claimed to have sent Plaintiff's trade secrets from her Bramshill email account to her personal SparHawk email account, without authorization and in contravention of Plaintiff's company protocols. *Id*. ¶ 47. In sum, Plaintiff alleges that Defendant impermissibly sent the trade secrets to her personal email account in violation of Plaintiff's policies and

---

at this stage Plaintiff's allegations are sufficient to make its "upon information and belief" assertions plausible.

confidentiality agreement – *i.e.* via the "improper means" of theft and/or breach of a duty to maintain secrecy. These allegations are sufficient at the motion to dismiss stage to plead a *prima facie* claim of misappropriation pursuant to an "improper acquisition" theory. *See Soto*, 2018 WL 1684339, at *7 ("Because [defendant] is alleged to have uploaded [plaintiff's] trade secrets from her work laptop to her personal cloud-based storage without [plaintiff's] permission and in direct violation of the confidentiality agreements that she signed, the complaint plausibly alleges that [defendant] acquired the trade secrets by improper means, *i.e.*, theft and in breach of her duty to maintain secrecy."). After considering the allegations in the light most favorable to Plaintiff, the Court finds at this stage that Plaintiff has sufficiently pled its claims for misappropriation of trade secrets under the DTSA and NJTSA. Accordingly, Defendant's motion to dismiss Counts One and Two is denied.

### B. Count Three – NJCROA

"The New Jersey Computer Related Offenses Act makes it unlawful to alter, damage, access, or obtain data from a computer without authorization. It also permits '[a] person or enterprise damaged in business or property' to sue for compensatory and punitive damages, as well as fees and costs." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 277 (3d Cir. 2016) (quoting N.J.S.A. 2A:38A-3). The NJCROA provides as follows:

> A person or *enterprise damaged in business or property* as a result of any of the following actions may sue the actor therefor in the Superior Court and may recover compensatory and punitive damages and the cost of the suit including a reasonable attorney's fee, costs of investigation and litigation:
>
> a. The purposeful or knowing, and unauthorized altering, damaging, taking or destruction of any data, data base, computer program, computer software or computer equipment existing internally or externally to a computer, computer system or computer network;

  b. The purposeful or knowing, and unauthorized altering, damaging, taking or destroying of a computer, computer system or computer network;

  c. The purposeful or knowing, and unauthorized accessing or attempt to access any computer, computer system or computer network;

  d. The purposeful or knowing, and unauthorized altering, accessing, tampering with, obtaining, intercepting, damaging or destroying of a financial instrument; or

  e. The purposeful or knowing accessing and reckless altering, damaging, destroying or obtaining of any data, data base, computer, computer program, computer software, computer equipment, computer system or computer network.[6]

N.J.S.A. 2A:38A-3 (emphasis added). Pursuant to its plain language, the NJCROA "requires a showing that a person or enterprise was damaged in business or property." *Spencer Sav. Bank SLA v. McGrover*, 2015 WL 966151, at *7 (N.J. Super. App. Div. Mar. 5, 2015); *see also Lexpath Techs. Holdings, Inc. v. Welch*, 744 F. App'x 74, 82 (3d Cir. 2018) (unpublished) ("We have said that a plaintiff must demonstrate damages under [the] CROA to sustain a claim."); *see also In re Nickelodeon Consumer Priv. Litig.*, No. 12-07829, 2015 WL 248334, at *5 (D.N.J. Jan. 20, 2015) (dismissing NJCROA claim where plaintiffs "failed to identify any property or business damage,

---

[6] N.J.S.A. 2A:38A-3 outlines five situations in which a defendant may be liable. Moreover, "[e]ach subsection of N.J.S.A. 2A:38A-3 is independent of the other[.]" *Trading Partners Collaboration, LLC v. Kantor*, No. 09-0823, 2009 WL 1653130, at *7 (D.N.J. June 9, 2009) (quoting *Fairway Dodge, L.L.C. v. Decker Dodge, Inc.*, 924 A.2d 517, 523 (N.J. 2007)). The Amended Complaint, however, does not clearly indicate which of the five categories is applicable in this matter. For example, the Amended Complaint appears to combine N.J.S.A. 2A:38A-3(c) with N.J.S.A. 2A:38A-3(a) when alleging that Defendant "accessed any computer, computer system, or computer network" and "altered [] any data" stored therein. *Compare* Am. Compl. ¶ 117, *with* N.J.S.A. 2A:38A-3(a) *and* N.J.S.A. 2A:38A-3(c). In addition, Plaintiff's opposition brief quotes N.J.S.A. 2A:38A-3(e), which refers to the "accessing and *reckless* altering, damaging, destroying or obtaining of any data[.]" Plaintiff's opposition also refers to Defendant "taking" its proprietary information "without authorization," presumably in reference to N.J.S.A. 2A:38A-3(a). The Court merely notes that neither the Amended Complaint nor Plaintiff's opposition brief clearly delineates its theory of liability under the NJCROA.

as is required"), *aff'd in part, vacated in part, remanded*, 827 F.3d 262 (3d Cir. 2016) ("Because we conclude that the plaintiffs have failed to allege the kind of injury that the [NJCROA] requires, we will affirm the District Court's dismissal of their claim."); *see also Marcus v. Rogers*, 2012 WL 2428046, at *4 (N.J. Super. App. Div. June 28, 2012) ("[The NJCROA] plainly requires a plaintiff to prove that he or she was 'damaged in business or property.'").

     Here, Plaintiff fails to sufficiently plead factual allegations in support of its contention that it has been "damaged in business or property." Rather, the Amended Complaint merely consists of various unsupported and conclusory allegations claiming that Plaintiff has suffered damages. *See, e.g.*, Am. Compl. ¶ 7 (stating that Defendant's conduct "necessitate[ed] this lawsuit to hold Defendant accountable for the damage she caused to Plaintiff's business"); *id.* ¶ 10 (claiming Defendant's conduct "has caused damages and will continue to cause damages to Bramshill and its business operations"); *id.* ¶ 23 ("Plaintiff has suffered significant monetary damages and loss due to Defendant's willful misconduct"); *id.* ¶ 25 ("Plaintiff will suffer irreparable harm for which it cannot be adequately compensated by monetary damages alone"); *id.* ¶ 89 ("Defendant's conduct . . . has caused Plaintiff to suffer significant damages and loss"); *id.* ¶ 90 ("Defendant's conduct . . . has caused and will continue to cause Plaintiff substantial and irreparable injury"); *id.* ¶ 120 ("As a result of the actions of Defendant, Plaintiff has been damaged"). Such conclusory allegations, however, are insufficient to plausibly plead damage to "business or property." *See In re Nickelodeon Consumer Priv. Litig.*, No. 12-07829, 2014 WL 3012873, at *18 (D.N.J. July 2, 2014) ("[Plaintiffs' complaint], however, is devoid of factual allegations regarding the 'business or property' damage [that] [p]laintiffs have suffered as a result of [d]efendant['s] [conduct]. . . . Without allegations demonstrating plausible damage to 'business or property,' [p]laintiffs cannot state a claim for relief under the CROA."). While Plaintiff does allege "upon information and

11

belief" that Defendant has "communicated with [Plaintiff]'s current and potential investors for personal gain," Am. Compl. ¶ 22, Plaintiff does not provide sufficient factual allegations to support this claim. In fact, Plaintiff neither expounds on this allegation nor even refers to it in its opposition brief.

Plaintiff also alleges that its "damages" include (1) "Greyline's [investigative] services invoices prior to, and following [Defendant]'s termination"; (2) "costs for an independent forensic expert to determine the extent of [Defendant]'s wrongful conduct"; and (3) "loss of reputation good-will from existing and prospective clients." *Id.* ¶ 91. With respect to the cost of the investigative services rendered by Greyline Partners, LLC – Plaintiff's outside compliance consultant – such "investigative costs" are not "damage[s] in business or property."[7] *Spencer Sav. Bank SLA*, 2015 WL 966151, at *7 ("The [NJCROA] requires proof that a plaintiff was damaged in business or property as a result of the proscribed conduct. [Plaintiff] urges that public policy requires that we interpret this plainly-worded phrase expansively to include [its] costs of investigation and attorneys' fees as damage to its business. Bedrock principles of statutory construction preclude such an indulgence."). With respect to Plaintiff's "costs for an independent forensic expert," Plaintiff appears to concede that such an independent inspection has not yet occurred; rather, Plaintiff requested that Defendant hand over her personal laptop for such an inspection, which Defendant declined to do. *See* Am. Compl. ¶¶ 10 n.1, 85. Plaintiff provides no relevant authority suggesting that such *yet-to-be incurred* costs constitute "damage in business or

---

[7] The Court also notes that the costs, or at least a portion of them, incurred as a result of Greyline's services appear to stem from Greyline's pre-existing compliance monitoring. *See* Am. Compl. ¶ 47 ("Greyline Partners LLC serves as an added level of compliance to ensure that all Bramshill employees are adhering to company policy, as well as applicable federal and state regulatory and privacy laws."). In other words, at least some of the costs associated with Greyline's services appear to be the result of pre-existing, routine monitoring, rather than "damages" to Plaintiff's "business or property as a result of" Defendant's alleged conduct.

12

property" under the NJCROA. With respect to Plaintiff's allegation regarding "loss of reputation good-will from existing and prospective clients," Plaintiff does not provide adequate factual allegations from which the Court could reasonably infer that Plaintiff has suffered such damages to its business. Without more, such a conclusory allegation is insufficient to withstand a motion to dismiss. In sum, the Court finds that Plaintiff has not adequately alleged its NJCROA claim. Count Three is dismissed.[8]

### C. Count Four – Breach of Contract

"Under New Jersey law, a proper breach of contract claim includes four elements: (1) the parties entered into a valid contract, (2) the plaintiff honored [its] own obligations under the contract, (3) the defendant failed to perform [its] obligations under the contract, and (4) the plaintiff sustained damages as a result." *MZL Capital Holdings, Inc v. TD Bank, N.A.*, 734 F. App'x 101, 105 (3d Cir. 2018) (unpublished). A plaintiff "must also specifically identify the portions of the contract that were allegedly breached." *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012) (citing *Skypala v. Mortgage Electronic Registration Systems, Inc.*, 655 F. Supp. 2d 451, 459 (D.N.J. 2009)).

Plaintiff has sufficiently alleged a claim for breach of contract.[9] Plaintiff alleges that Defendant entered into a valid and enforceable Employment Agreement. Am. Compl. ¶ 122.

---

[8] Nothing in this Opinion prevents Plaintiff from moving to amend its pleading if, during the course of discovery, Plaintiff discovers evidence from which it believes that it can plausibly allege it was actually "damaged in business or property."

[9] Plaintiff also appears to independently base its breach of contract claim on Defendant's failure to abide by Bramshill's "Compliance Manual" and "Code of Ethics." Am. Compl. ¶ 123. Plaintiff, however, fails to attach a copy of either document to its Amended Complaint. As to the "Compliance Manual," moreover, Plaintiff does not "specifically identify [which] portions of the contract [] were allegedly breached." *Faistl*, 2012 WL 3835815, at *7. As to the "Code of Ethics," while Plaintiff provides a particular provision it claims Defendant breached, Plaintiff does not adequately explain how this provision gives rise to a breach of contract pursuant to the theory of

Plaintiff asserts that Defendant breached her Employment Agreement by "wrongfully convert[ing] the Confidential/Proprietary Information belonging to Plaintiff and [] retain[ing] and improperly us[ing] that information prior to and after the termination of her employment with Plaintiff." *Id*. ¶ 126. Defendant's Employment Agreement contains a "Confidentiality" provision that reads, in relevant part, as follows:

> [6(a)] Employee acknowledges that Employee has access to secret and confidential information of Employer relating to the Clients and their Employees and the Employees of Employer, all of which are valuable, special and unique assets of Employer's business. The secret and confidential information described above includes, but is not limited to: (i) the names, addresses, and telephone numbers of Clients and of their Employees and representatives; (ii) the nature of the business and operations of any Client; (iii) the amount, nature, volume, and quantity of, and other information regarding, the services purchased or otherwise acquired by any Client or required by any Client; (iv) the nature of the Employee business operations and accounting procedures of Employer; (v) the methods, processes, systems, and know-how used, developed, or acquired by Employer in connection with the investment advisory and investment management businesses, including without limitation any such methods, processes, systems, and know-how invented, conceived, developed, improved, or perfected by Employee during the Term; (vi) Employer's prices, fees, or charges to Clients for its products or services and the compensation paid to Employer by a Client or otherwise received by Employer; (vii) information regarding the salaries, bonuses, or other compensation paid by Employer to its Employees; and (viii) accounting and financial information regarding the operations and financial position of Employer and the Clients.

*Id*. ¶ 70; *see also* D.E. 43-3, Ex. C.  The Employment Agreement also contains a "Non-Disclosure" provision that reads, in relevant part, as follows:

> [6(b)] Employee acknowledges that all of the secret and confidential information described in Section [6(a)] is the sole and exclusive property of Employer. Employee acknowledges that such secret and

---

liability set forth by Plaintiff.  *Compare* Am. Compl. ¶ 76, *with id*. ¶¶ 125-126.  In any event, because Plaintiff has sufficiently alleged a breach of the Employment Agreement, the Court does not address the foregoing issues.

> confidential information is revealed to Employee in trust, based solely upon the confidential relationship existing between Employer and Employee, or was invented, conceived, developed, improved, or perfected by Employee on behalf of Employer. Employee acknowledges and agrees that all records, memoranda, notes, files, invoices, acknowledgments, proposals, and other documents or written information in the possession of Employer or Employee concerning such secret and confidential information are the sole and exclusive property of Employer and that all records, files, manuals, forms materials, and supplies furnished to Employee or used by Employee, and all data or information recorded or placed on such records, files, forms, materials, and supplies by Employee or any other person belong to Employer and shall at all times remain Employer's sole and exclusive property. Employee agrees that, upon termination of this Agreement, howsoever such termination is brought about, or upon request of Employer prior to such termination, Employee shall deliver to Employer all books, records, files, manuals, forms, materials, supplies, or other writings referred to above, and all copies of such writings. Employee agrees that [s]he shall not make or retain any copies of such writings for her own personal use, or take the originals or copies of any such writings from the offices of Employer upon termination of this Agreement. Employee further agrees that [s]he shall not, either during or after the Term, publish, distribute, or deliver any of such writings or records to any other person or entity, or disclose to any person or entity the contents of such records or writings or any of the secret and confidential information described in Section [6(a)] except as may be required in the course of Employee's employment by Employer.

*Id.* ¶ 71; *see also* Ex. C. In light of the foregoing contractual language, Plaintiff alleges that "Defendant specifically warranted and agreed that she would not disclose to any person or use for her own purposes any of Plaintiff's Confidential/Proprietary Information," and that "Defendant warranted and agreed that she would return all of Plaintiff's documents and other property, including the Confidential/Proprietary Information." *Id.* ¶ 125. The Court finds at this stage that Plaintiff has sufficiently alleged that Defendant breached her Employment Agreement by using/disclosing Plaintiff's proprietary information in connection with SparHawk, and also

improperly retaining Plaintiff's proprietary information upon the termination of her employment. Accordingly, Defendant's motion to dismiss Count Four is denied.

### D. Count Five – Breach of the Duty of Loyalty

Under New Jersey law, "an employee owes [her] employer a fiduciary duty of loyalty, which 'consists of certain very basic and common-sense obligations. An employee must not while employed act contrary to the employer's interest.'" *Vibra-Tech Engineers, Inc. v. Kavalek*, 849 F. Supp. 2d 462, 489 (D.N.J. 2012) (quoting *Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158, 1168 (N.J. 2001)). Unsurprisingly, "an employee has a duty not to compete with his or her employer" during the course of her employment; however, "[a]n employee may [also] breach the duty of loyalty by actions that do not rise to the level of direct competition." *Id.* (citing *Cameco v. Gedicke*, 724 A.2d 783, 789 (N.J. 1999)). To this end, an "employee[] can breach the duty of loyalty by engaging in self-dealing or by taking or using legally protected information to benefit [her]self." *Id.*

Plaintiff sufficiently alleges that Defendant breach her duty of loyalty. Plaintiff alleges that Defendant breached her duty of loyalty by "performing unauthorized competing independent asset management services for her own benefit, and using [] Plaintiff's Confidential/Proprietary Information in furtherance of that scheme"; "wrongfully converting and possessing physical copies of Plaintiff's critical business files, work emails, and other data"; and "downloading and possessing [the] Confidential/Proprietary Information [] while still [] employed by Plaintiff, retaining that information after the termination of her employment relationship with Plaintiff, and using [the] Confidential/Proprietary Information to compete with Plaintiff during and after her employment relationship with Plaintiff." Am. Compl. ¶ 132. At this stage, Plaintiff has adequately alleged that Defendant sent Plaintiff's proprietary information to her personal email account

16

without authorization and with the intent to use (and did use) that information in connection with her competing company, SparHawk. As such, the Court finds that Plaintiff has sufficiently alleged a breach of the duty of loyalty. Defendant's motion to dismiss Count Five is denied.

### E. Count Six – Unjust Enrichment

"To prove a claim for unjust enrichment, a party must demonstrate that the opposing party 'received a benefit and that retention of that benefit without payment would be unjust.'" *Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016) (quoting *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007)). A claim of unjust enrichment also "requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* (internal quotations omitted); *see also Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012) ("For an unjust enrichment claim to succeed, there must be a showing that 'the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred.'").

Here, Plaintiff fails to sufficiently allege its unjust enrichment claim because it has not alleged that it "performed or otherwise conferred a benefit on [Defendant] under a quasi-contractual relationship *with the expectation of remuneration*." *Swift v. Pandey*, No. 13-649, 2014 WL 1366436, at *5 (D.N.J. Apr. 7, 2014) (emphasis added). Plaintiff fails to allege that it expected remuneration from Defendant at the time. Neither the Amended Complaint nor Plaintiff's opposition brief addressees this necessary element. As such, Plaintiff's unjust enrichment claim is insufficiently pled, and the Court dismisses Count Six.

### F. Attorney's Fees

Defendant also requests that the Court award her reasonable attorney's fees because, according to Defendant, Plaintiff's claims under the DTSA and NJTSA were made in bad faith. Def.'s Br. at 26-27. Under the DTSA, a court may award attorney's fees "if a claim of [] misappropriation is made in bad faith, which may be established by circumstantial evidence." 18 U.S.C. § 1836(b)(3)(D); *see also* N.J.S.A. 56:15-6 ("[A] court may award to the prevailing party reasonable attorney's fees and costs" where "a claim of misappropriation is made in bad faith"). The Court, however, has already found Plaintiff's misappropriation claims to be sufficiently pled. Accordingly, the Court does not find that such claims were made in bad faith and therefore denies Defendant's request for attorney's fees.

### V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, D.E. 45, is **GRANTED in part** and **DENIED in part**. Defendant's motion is **DENIED** as to Counts One, Two, Four and Five. Defendant's motion is **GRANTED** as to Counts Three and Six – those claims are dismissed without prejudice. Plaintiff is afforded thirty (30) days to file an amended complaint as to the claims dismissed without prejudice, if it so chooses, consistent with this Opinion. If Plaintiff fails to file an amended complaint, the dismissal as to Count Six will be with prejudice.[10] An appropriate Order accompanies this Opinion.

Dated: August 10th, 2020

_____
John Michael Vazquez, U.S.D.J.

---

[10] As referenced in note eight, with respect to Count Three, it is reasonably foreseeable that Plaintiff may learn of evidence during discovery that may permit it to plausibly reassert Count Three. Thus, if Plaintiff does not attempt to amend Count Three at this time, the Court will nevertheless not dismiss the count with prejudice.